leans, of counsel), for appellants. Cage, Baldwin & Crabites, W. S. Parkerson, and Stirling Parkerson, all of New Orleans, for appellees.

SOMMERVILLE, J. For the reasons given in No. 19,457, Olivier, Voorhies & Lowrey v. J. A. Majors et al., 63 South. 323, 133 La. 764, this day decided:

It is ordered, adjudged, and decreed that the judgment appealed from be amended in part, as follows:

That the sale of 158 shares of the capital stock of the Hibernia Bank and Trust Company of New Orleans (then and now in the possession of the German-American National Bank of New Orleans, and described in plaintiff's petition) by Thomas J. Majors, one of the defendants herein, to J. A. Majors, one of the defendants herein, on the 12th day of November, 1909, is fraudulent, and that it be set aside and avoided in so far as plaintiffs are concerned, as in fraud of them as creditors of T. J. Majors, and that said property, or the proceeds thereof, in the hands of the German-American National Bank, over and above the amount due to said bank on the note of J. A. Majors, for the payment of which said certificate of stock was given as security, is the property of T. J. Majors, and subject to the claims of his said complaining creditors. And, as thus amended, said judgment be affirmed; costs of appeal to be paid by appellants.

———

(63 South. 354.)

Nos. 19,049, 19,074.

INTERSTATE TRUST & BANKING CO. v. UNITED STATES FIDELITY & GUARANTY CO. (MONK, PALMER & HARDIN et al., Interveners).

(Oct. 20, 1913. Rehearing Denied Nov. 17, 1913.)

*(Syllabus by the Court.)*

1. RECEIVERS (§ 212*)—CLAIMS—BOND TO SECURE—LIABILITY.

Where a corporation, as receiver of another corporation, joins the latter in a petition to the court, in which it is alleged that the receiver has devoted 13 months to the administration of the property of such other corporation and to the ascertainment of its debts, that said corporation is able and willing to pay, immediately, the debts of the receivership then due and to assume others which, though contracted, have not yet fallen due, that it has provided, satisfactorily, for approximately, 90 per cent. of its original indebtedness and is able and willing to give bond for the payment, within six months, of the remaining 10 per cent., which will not exceed $10,000, and will

be amply secured by a bond of $25,000, and in which petition the court is advised to accept such bond, discharge the receivers, and reinstate the corporation in the possession of its property, and where the action so recommended having been taken by the court, and thereafter the six months delay having expired and the balance of the original indebtedness not having been paid, the receiver brings suit on the bond, upon a secured, or partially secured, debt alleged to have been held by it at the date of the filing of the petition, and which of itself and without considering other debts, similar in character and greater in amount, exceeds the amount for which the bond was executed, the receiver must accept one or the other of the two positions, viz., that the debt to it, being regarded as otherwise secured, was not within the contemplation of the bond, or that, having induced the surety to execute, the court to accept, and the other creditors to acquiesce in the acceptance of the bond, upon the faith of its representations, which it was bound to know were untrue, it thereby, as to any debt due to itself, destroyed the basis of the obligation represented by the bond, and from neither position has it any standing to recover on the bond.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 422; Dec. Dig. § 212.*]

2. RECEIVERS (§ 212*)—LIABILITY ON BOND.

Where, at the instance of the receivers of a corporation and the corporation, a bond is accepted to protect the original creditors of the corporation, reinstated in the possession of its property, and where thereafter the creditors, claiming an interest, are cited, as in concurso, to litigate their claims against the bond, and one of the receivers, professing to hold such claim, though cited, fails to appear, there is no law which authorizes the judge to order the surety on the bond to pay into court an amount, hypothetically attributable to such claim, to be held by the clerk to await the convenience of the claimant.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 422; Dec. Dig. § 212.*]

3. LIMITATION OF ACTIONS (§ 29*) — ACTION FOR PRICE—PRESCRIPTION.

Claims for the price of goods sold and delivered on open account are barred by the prescription of three years.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 136–140; Dec. Dig. § 29.*]

4. RECEIVERS (§ 212*) — BOND TO SECURE CREDITORS—DEBTS OF RECEIVERSHIP.

Where, by an order of court, discharging the receivers of a corporation and reinstating the corporation in the possession of its property, provision is made for the debts of the receivership due and to become due, as contradistinguished from the original debts of the corporation, for the payment of which latter a

bond is required, such bond cannot be made available to protect the debts of the receivership.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 422; Dec. Dig. § 212.*]

5. RECEIVERS (§ 212*)—POWERS OF CORPORATION—BOND FOR PROTECTION OF CREDITORS.

A corporation in the hands of receivers has no capacity to contract debts to attorneys employed by its members to extricate it from its position; and a claim for services rendered in that behalf is not recoverable against a bond, received by order of court for the protection of the original creditors of the corporation.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 422; Dec. Dig. § 212.*]

Provosty, J., dissenting.

Appeal from Twelfth Judicial District Court, Parish of Vernon; Don E. So Relle, Judge.

Action by the Interstate Trust & Banking Company against the United States Fidelity & Guaranty Company, in which Monk, Palmer & Hardin and others intervened. From the decree, plaintiff and defendant appeal. Reversed in part, and affirmed in part.

Robt. H. Marr, of New Orleans, for plaintiff. Paul A. Sompayrac and Howe, Fenner, Spencer & Cocke, all of New Orleans, for plaintiff on rehearing. J. R. Monk, of Leesville, and J. Zach Spearing, of New Orleans, for defendant. Sutherlin & Levy and J. C. Pugh, all of Shreveport, for intervener Lee. S. I. Foster, of Leesville, for various interveners.

## Statement of the Case.

MONROE, J. Plaintiff brings this suit to recover certain balances said to be due upon two promissory notes, issued in negotiable form by Powell Bros. & Sanders Company, Limited, and acquired for value before maturity; the one, for $17,500, purporting to be secured by collaterals, the other, for $25,000, purporting to be secured, or partly secured, by mortgage. The suit is brought against the maker of the notes (Powell Bros. & Sanders Company, Limited) and against the United States Fidelity & Guaranty Company, as the surety upon a certain bond, to which we shall refer hereafter. The balance due upon that date, upon the note of $17,500, is shown to have been in the neighborhood of $10,000, and the balance then due on the mortgage note was apparently (including interest and attorneys fees) about $30,000, making a total of say $40,000. On November 24, 1905, which was shortly after the notes matured, the corporation by which they were made was placed in the hands of Thomas C. Wingate, as temporary receiver, and a little later he and the Interstate Trust & Banking Company, plaintiff herein, were appointed permanent receivers in which capacity they administered the affairs of the corporation, as a going concern, until August 29, 1906, when they applied to the court for an order to sell all of its property in order to pay its debts. The company opposed the application, alleging that it was in a position to pay, and to give bond for the payment of, such of its debts as were still unpaid; and on December 20, 1906, the company, joined by the two receivers, presented a petition to the court, verified by the affidavit of one of its officers and by Mr. Wingate, one of the receivers, in which it was alleged (quoting in part) as follows:

"The petition of Powell Bros. & Sanders Company, Limited, * * * and of Interstate Trust & Banking Company, * * * and of Thomas C. Wingate * * * with respect represents: That * * * your petitioners Interstate Trust & Banking Company and Thomas C. Wingate were duly appointed * * * receivers of Powell Bros. & Sanders Company, Limited, and * * * since that time have been engaged in the administration of said property of said company, in the ascertainment of its debts and liabilities, and in the collection of its assets; that * * * your petitioners * * * applied * * * for an order * * * directing them to sell * * * all the property * * * of said company in order to * * * pay * * * the debts; * * * and in due course an opposition was filed * * * by Powell Bros. & Sanders Company, Limited, upon the ground that it had made agreements for the satisfaction of its debts. * * * Your petitioner Powell Bros. & Sanders Company, Limited, now represents that D. G. Saunders, a large stockholder in said company, has acquired from

creditors of your petitioner * * * all debts due by petitioner, except a very small number, not exceeding, in the aggregate, the sum of $10,-000, which petitioner Powell Bros. & Sanders Company, Limited, are (is) able to, and will within a reasonable time, pay off.

"Your petitioners further represent that there are owing by the receivers herein, in the form of receivers' certificates and open accounts, receivership debts, amounting in the aggregate to $25,000, of which amount $5,286.23 are for goods and merchandise purchased on the customary 60 days' time and are therefore, at the present time, not now due, leaving the net amount actually due by the receivers the sum of $20,-362.13. From this latter sum, however, should be deducted an amount due by your petitioner Interstate Trust & Banking Company, an account of timber cut from lands mortgaged to it, the sum of $4,928.64, which it has arranged with your petitioner Powell Bros. & Sanders Company, Limited, and agrees to release the receivers from liability therefor. This leaves the total amount to be provided to pay the receivers' debts now actually due (exclusive of receivers' fees) the sum of $15,365.38. Your petitioners further represent that they consider a proper allowance for the services of the receivers and their counsel would be as follows:

Thomas C. Wingate............$8,000 00
Interstate Trust and Banking Co. 6,000 00
Howe, Fenner, Spencer & Cocke.. 3,750 00
Sholars & Williamson........... 3,750 00

"Petitioners further represent that there has been deposited in the Bank of Leesville, to the credit of the receivers, for the payment of the aforesaid receivers' debts and compensation, a sufficient sum to fully meet and satisfy the same, and that said debts will be paid immediately upon the entry of an order discharging the receivers herein.

"Petitioners further represent that, so far as concerns the debts of the receivership which are not now due, amounting, as aforesaid, to the sum of $5,286.23, Powell Bros. & Sanders Company, Limited, should be allowed to assume same and pay them as and when they become due and payable.

"That so far as concerns the unpaid debts of Powell Bros. & Sanders Company, Limited, other than the debts owned by D. G. Saunders, the creditors will be amply protected by requiring of Powell Bros. & Sanders Company, Limited, a bond in the sum of $25,000, with the United States Fidelity & Guaranty Company, of Baltimore, Md., as security, conditioned for the payment of said debts within the period of six months from the entry of an order herein, in view of the fact that D. G. Saunders expressly waives the benefit of any bond in his favor for the debts owned by him, which are described in a schedule annexed to a petition of consent filed herewith. That your petitioner Powell Bros. & Sanders Company, Limited, is willing that the court should enter an order discharging the receivers and restoring the property to

it. That reservation should be made by the court of its right to retake the property if it does not pay and satisfy the debts owing by the receivers, but not now due, as and when same shall mature, and if it does not pay and discharge the debts due by Powell Bros. & Sanders Company, Limited, protected by said bond, within the period of six months.

"Your petitioner Powell Bros. & Sanders Company, Limited, represents that it has examined the affairs and accounts of the administration of the Interstate Trust & Banking Company and Thomas C. Wingate, receivers, and has found same in order and correct and satisfactory, and it is willing, on delivery of the property to grant a full release and acquittance to said receivers.

"Under the circumstances, your petitioners believe that it is to the interest of all parties concerned that the receivers be discharged and acquitted of all further responsibility in the premises, and that the property should be restored to Powell Bros. & Sanders Company, Limited, and that the bond filed herein should be approved; and they pray for such further orders in the premises as the court may deem proper."

D. G. Saunders, by separate petition, joined in the application for the return of the property and the discharge of the receivers and waived all claim to security for the debts which he had acquired. After hearing the matter so presented, the court a qua gave judgments to the following effect, to wit:

That the receivers be discharged and directed to restore to Powell Bros. & Sanders Company, Limited, all of its property; that the bond of $25,000, tendered by said company, "to guarantee the payment * * * of all lawful debts due by said company, now unpaid (except the debts purchased by D. G. Saunders * * *), is hereby accepted and approved and ordered filed herein; that Powell Bros. & Sanders Company, Limited, shall assume, and pay, when due, the accounts payable of the receivers herein, and shall pay, within six months from the date of this order, all of the lawful debts of Powell Bros. & Sanders Company, Limited, and, in the event of their failure to do so, the court reserves the right to retake the property and place it in the hands of its receivers, or receiver; that the compensation of the receiv-

ers and attorneys is fixed at the amounts stated in the petition; that the receivers shall pay" out of the funds placed in their hands by Powell Bros. & Sanders Company, Limited, the debts of the receivership that are due and payable; that, as soon as said debts are paid, the receivers may apply for final discharge and for the cancellation of their bonds. And finally as follows:

"Before delivery of the possession of the property by the receivers to Powell Bros. &'Sanders Company, Limited, it shall assume, in writing, all liability of any [if any] of the receivers, to Nathaniel E. Lee, growing out of the matters alleged in the suit of N. E. Lee v. Thos. C. Wingate and Interstate Trust & Banking Co., Receivers, No. —— of the docket of this court; said Powell Bros. & Sanders Company, Limited, shall make itself a party defendant to said suit, in place of the said receivers; and said suit shall proceed against it as though the said receivers had not been discharged."

The bond, which was executed on December 19, 1906 (the day prior to that upon which the petition was filed), reads, in part, as follows:

"Know all men * * * that we, Powell Bros. & Sanders Company, Limited, * * * and United States Fidelity & Guaranty Company, * * * as surety, are held and firmly bound unto the Honorable J. B. Lee, judge, * * * and his successors in office, for the use and benefit of ·the lawful creditors of Powell Bros. & Sanders Company, Limited (except the persons who have assigned their claims to D. G. Saunders and D. G. Saunders Lumber Company, appearing on a schedule annexed to a petition filed in this court on the 20th day of December 1906, by the said D. G. Saunders), in the full and just sum of $25,000, for the payment of which. * * * Now the condition of the above obligation is such that: Whereas, the above-bounden Powell Bros. & Sanders Company, Limited, has on this day presented to the * * * court a petition praying that the Interstate Trust & Banking Company, Limited, and Thomas C. Wingate, receivers of Powell Bros. & Sanders Company, Limited, be discharged * * * and that the property heretofore placed in their possession and control be, by the court, restored to it; and

"Whereas, the Honorable J. B. Lee, judge, * * * has this day entered his order discharging said receivers * * * and ordering them to deliver and restore to Powell Bros. & Sanders Company, Limited, all of the property, assets, and effects in their possession, but requiring the above-bounden Powell Bros. & Sanders Company, Limited, to give bond in the sum of $25,000 to guarantee the payment of all the lawful debts of said company except the debts now owned by D. G. Saunders, or D. G. Saunders Lumber Company (purchased by him from the creditors specified in the schedule annexed to his petition, this day filed), within a period of six months from the date of said order discharging said receivers and restoring said property.

"Now, therefore, if the said Powell Bros. & Sanders Company, Limited, shall * * * pay and discharge all the lawful debts of said corporation, except those herein excepted, this obligation shall be null and void; otherwise to remain in full force and effect."

Thereafter, on June 29, 1907, certain parties filed a petition in the district court alleging that they were creditors of Powell Bros. & Sanders Company, Limited, and beneficiaries of the bond so given, further alleging that the delay granted to that company for the payment of its debts had expired, and that the debts remained unpaid, and praying for the reappointment of a receiver.

Thomas C. Wingate was accordingly so reappointed, and, in the course of the testimony given by him on the trial of this case, he says that all the property of the company has been sold and the proceeds, with the exception of a few hundred dollars, distributed in the payment of privileged and mortgage debts; the ordinary creditors receiving nothing.

The petition in this case was filed on February 28, 1910, and it sets forth most of the facts which have been hereinabove narrated, and further alleges and prays as follows:

"That although the period of time, fixed by the court, within which the debts due by Powell Bros. & Sanders Company, Limited, and secured by said bond, should be satisfied and discharged, expired on June 20, 1907, said Powell Bros. & Sanders Company, Limited, has failed, neglected, or refused to pay and satisfy the debt due to your petitioner, which is one of the debts due by said bond, and said Powell Bros. & Sanders Company, Limited, is now utterly insolvent. * * * That various other persons and corporations claim to be creditors * * * and entitled to the protection of the bond * * * and have instituted suits. ·* * * That the following named persons and corporations, to the best of petitioner's knowledge and belief, claim * * * to be entitled to the protection of said bond, to wit: [Then follow

the names of the parties referred to, with the amounts claimed by them, aggregating $40,075.-86.] Petitioner, on information and belief, avers that said Powell Bros. & Sanders Company, Limited, is not indebted to said parties in any sum or, at any rate, not to the extent claimed by them. That, under and pursuant to a decree of the honorable the Supreme Court of Louisiana, * * * it is necessary and proper that your petitioner should make all known creditors, * * * claiming the benefit of the bond aforesaid, parties to this suit. * * * Wherefore * * * petitioner prays that Powell Bros. & Sanders Company, Limited, * * * and Thomas C. Wingate, receiver, * * * said United States Fidelity & Guaranty Company, through John T. Michel, secretary of State, said Thomas C. Wingate, individually, James J. Hicks, and Maurice Rosenthal be cited herein, and that the corporations and persons named herein be cited through their attorneys of record to appear, answer, or intervene, herein, as they may be advised, and, after due proceedings had, that there be judgment in favor of your petitioner and against said Powell Bros. & Sanders Company, Limited, and the United States Fidelity & Guaranty Company, in solido, in the full sum of $17,500, with interest, * * * subject to the credits hereinbefore detailed, as well as the sum of $25,000, with interest, * * * subject to the credits hereinbefore mentioned. * * * In the alternative, in case the bond * * * be insufficient to pay all the lawful creditors * * * entitled to the protection of said bond, then, for judgment in the above amounts against said Powell Bros. & Sanders Company, Limited, and * * * United States * * * Company, in solido, for the pro rata which the court may decide your petitioner is entitled to; and petitioner further prays that this honorable court will enter its order herein requiring the clerk * * * to post a copy of this petition at the courthouse door, with citation calling upon all parties at interest to appear and intervene on their respective behalfs, and that the said clerk be ordered to publish a notice in a newspaper, published in the town of Leesville, Vernon parish, calling on all parties in interest; claiming to be lawful creditors of Powell Bros. & Sanders Company, Limited, and entitled to the protection of said bond, to appear herein for the protection of their interests," etc.

The order thus prayed for was made and executed, and certain of the parties in interest appeared and litigated, as will be stated.

The surety company filed certain exceptions, which are not now insisted on, after which it answered, in effect, that the bond sued on has never been legally assigned to plaintiff; that the creditors, for whose benefit it was executed, have taken possession, through the reappointed receiver, of the property of their debtor; that plaintiff has caused a portion of it to be sold, thereby disabling said debtor from paying its debts; that said creditors are unable, by reason of those facts, to subrogate respondent to their rights, wherefore respondent is released; that the claim set up by plaintiff was not among those intended to be protected by the bond sued on, which was executed, so far as respondent was concerned, upon the faith of the allegations, contained in the petition to which plaintiff was a party, to the effect that the debts to be secured did not exceed $10,000, whereas the amounts now claimed by the two receivers, as having been due them when their petition was filed, exceed the $25,000 called for by the bond; that, having thus participated in the making of false representations whereby respondent was induced to sign said bond, plaintiff cannot now be permitted to profit thereby, at respondent's expense; that all of the parties claiming the protection of said bond are not before the court; and that respondent cannot be condemned with respect to any claim arising thereunder under such circumstances.

As against the demands of the different parties, other than plaintiff, who appeared in the district court, asserting claims under the bond, the surety set up, so far as applicable, the defenses urged against the plaintiff, especially that the claims were not within the protection of the bond, and further interposed pleas of prescription; and, after hearing there was judgment in favor of Thomas C. Wingate and estate of James J. Hicks, to the effect that, from the $25,000 called for by the bond sued on, there be deposited, with the clerk of the court, the pro rata amount which would be due said parties, on their claim for $18,000, then pend-

ing in the United States Circuit Court, said amount to be paid to them in the event of their obtaining judgment on said claim, otherwise the $18,000 to be returned and distributed among the other parties named in the judgment, and in favor of other parties and against Powell Bros. & Sanders Company, Limited, and the United States Fidelity & Guaranty Company, in solido, as follows:

Interstate Trust & Banking Company, $6,746.65; Brown Manufacturing Company, $94.40; Falls City Clothing Company, $937; Rothschild Bros. Hat Company, $674.75; Maurice Rosenthal, $614.05; Filer & Stowell Company, $1,146.23; Monk, Palmer & Hardin, $2,500; Nathaniel E. Lee, $15,000; P. L. Ferguson, $50.

It was further decreed, in effect, that the amount so awarded should be paid pro rata from the $25,000 called for by the bond; that the surety company should be subrogated to the rights of creditors receiving payment; and that Powell Bros. & Sanders Company, Limited, and the surety company should pay the costs. The Interstate Trust & Banking Company and the United States Fidelity & Guaranty Company have appealed.

### Opinion.

The objection that the bond sued on has not been properly assigned is without support either in fact or law and is not insisted on. The objection that the creditors have taken possession of the property of their debtor and are unable to subrogate the surety is equally without merit, since the bond was given in contemplation of that contingency.

Plaintiff herein, as an officer of the court, with its coreceiver and co-officer, joined the corporation, whose property had been placed in the keeping of said receivers (for the benefit of the owner and all the creditors of the owner), in a petition to the court, in which it was represented that approximately 90 per cent. of the original indebtedness of the corporation had been paid by one of its stockholders (who joined in the prayer of the petition and waived all claim to protection with respect to the indebtedness so paid); that the balance of such indebtedness would not exceed $10,000, which amount the corporation would be able to pay, and was willing to give bond to pay, within six months; that the receivership had purchased goods and merchandise to the amount of $5,286.23, the bills for which were not yet due, and that the corporation should be allowed to assume them and pay them when they should fall due; that the debts contracted by the receivership, and actually due, amounted to $15,365.38, to which were to be added fees due the receivers and attorneys to the amount of $21,500, making a total of $36,865.38, which amount had been deposited in bank to the credit of the receivers and would be used immediately in paying said debts. Plaintiff herein and its coreceiver specifically alleged that they had been appointed to their positions on November 24, 1905, and had entered into possession of the property of Powell Bros. & Sanders Company, Limited, "and since that time * * * have been engaged in the administration of said property of said company, in the ascertainment of its debts and liabilities, and in the collection of its assets" (the period thus referred to extending from November 24, 1905, to December 19, 1906). All of the petitioners joined in the allegations:

"That, so far as concerns the unpaid debts of Powell Bros. & Sanders Company, Limited, other than the debts owned by D. G. Saunders, the creditors will be amply protected by * * * a bond in the sum of $25,000 with the United States Fidelity & Guaranty Company, * * * as security, conditioned for the payment of said debts within the period of six months from the entry of an order herein. * * *"

And the petition concludes with the following recommendation to the court:

"Under the circumstances, your petitioners believe that it is to the interest of all parties concerned that the receivers be discharged and acquitted of all further responsibility in the premises, and that the property should be restored to Powell Bros. & Sanders Company, Limited, and that the bond filed herein should be approved; and they pray for such further orders in the premises as the court may deem proper."

It now appears, from the petition herein filed by plaintiff, that, at the time of the filing of the petition above quoted, it (plaintiff) held the two notes here sued on, which then represented a balance of indebtedness of Powell Bros. & Sanders Company, Limited, to the amount of about $40,000, and it otherwise appears that plaintiff's coreceiver, Wingate, with his associate, Hicks, held four notes of that company, representing, in principal, interest, and attorneys' fees, $19,155.16. To secure the note of $17,500 held by plaintiff, there were collaterals pledged, of the face value of $21,000, from which a considerable part of the debt was subsequently paid, so that, at the date of the filing of the petition for the discharge of the receivers, the balance due was, say, $9,807.44. The note for $25,000 is said to have been secured, or partially secured, by a mortgage, but, as we understand, from the allegation of the petition herein filed was wholly unpaid, in principal and interest, when plaintiff advised the court that "as to the unpaid debts of Powell Bros. & Sanders Company, Limited, other than the debts owned by D. G. Saunders, the creditors will be amply protected by * * * a bond in the sum of $25,000." The allegations thus referred to are as follows:

"Your petitioner further represents: That it is the holder and owner for valuable consideration, before maturity, of an additional promissory note signed by the said Powell Bros. & Sanders Company, Limited, dated April 20, 1905, payable on or before six months after date, to the order of the Crescent Lumber Company, for the sum of $25,000, with 7 per cent. per annum interest until paid and 10 per cent. attorneys' fees in the event of suit, or in the event said note is placed in the hands of an attorney for collection, after maturity. That said note is duly paraphed ne varietur to identify it with an act of mortgage, passed before W. B. Williamson, notary public, Vernon parish, La. That said note is subject to the following credits; $570, paid on March 25, 1907; $500, paid on May 28, 1907; and $1,000, paid June 4, 1907. That, as an additional security for the payment of the said sum, a mortgage was given on certain lands and timber in Vernon parish, and that on July 20, 1909, your petitioner caused executory process to issue thereon, and on January 15, 1910, the said (property) was sold at public auction by J. H. Wood, coroner of Vernon parish, at which sale your petitioner became the purchaser for the consideration of $3,000. That said sum is now held by the coroner, in pursuance of an order of court, to respond to a claim by Thos. Wingate, receiver of Powell Bros. & Sanders Company, Limited, for expenses of receivership, receiver's fees, attorneys' fees, court costs, taxes, receiver's certificates, etc., all of which aggregate a sum in excess of $30,000."

It will thus be seen that on December 20, 1906, when the bond here sued on was given, there were no credits on the note, and that the amount apparently due was $25,000, with interest at 7 per cent. from April 20, 1905, and probably 10 per cent. as attorney's fees, and the petition in this case prays for judgment for "$17,500, with interest at the rate of 8 per cent. per annum from October 2, 1905, until paid, subject to the credits hereinbefore detailed, as well as the sum of $25,000, with 7 per cent. per annum interest thereon from April 20, 1905, until paid, subject to the credits hereinbefore mentioned in detail."

Plaintiff made no effort on the trial of this case to prove up any claim on the note of $25,000, and it has been ignored in the argument. More than that, though it is conceded that there was due on the note of $17,500 on December 19, 1906, a balance of $9,807.44, though the judgment in this case, rendered on June 15, 1911, awards plaintiff only $6,746.65 on account of that balance, and though plaintiff has appealed from that judgment, as a whole, it now says (through the brief of its counsel) "that the judgment in favor of the Interstate Trust & Banking Company [should] be sustained."

Looking still further into this phase of the case, it appears, from the record, that in

addition to $19,155.16, claimed by Wingate and Hicks, and, say, $40,000, which, according to plaintiff's present allegations, were then due to it there were other debts due by Powell Bros. & Sanders Company, Limited (not included in the purchases by D. G. Saunders and not included in the judgment herein rendered), as follows, to wit: Bank of Leesville, $10,000, with interest at 8 per cent. from December 19, 1906, until paid, and 10 per cent. attorneys' fees in case of suit; W. C. Lanahan, $1,000, with interest at 8 per cent. from December 19, 1906, and 10 per cent. attorneys' fees in case of suit; J. C. Cremer, $22,500, with interest at 7 per cent. from October 15, 1905, and $22,500, with interest at 7 per cent. from January 15, 1906, and 10 per cent. attorneys' fees in case of suit; Vordenbaumen-Eastham Company, $170.29; S. G. Dreyfous & Co., $223.70; Lee Hardware Company, Limited, $309.42, interest and attorneys' fees; National Bank of Commerce, $4,182.09, with interest from August 29, 1905; W. C. Faircloth, $400; W. K. Henderson Iron Works & Supply Company, Limited, $1,368.68, with interest and attorneys' fees—making a total (including the amounts now claimed to have been due to the receivers) of, say, $120,409.32, exclusive of interest and attorneys' fees.

It is true that by far the larger proportion of the debts thus enumerated appear to have been secured, and it was probably upon that basis that plaintiff made itself a party to the petition which assured the court that D. G. Saunders, a stockholder, had acquired all debts due by Powell Bros. & Sanders Company, Limited, "except a very small number, not exceeding in the aggregate amount the sum of $10,000," which Powell Bros. & Sanders Company, Limited, would be able to pay, and would pay, within a reasonable time. But it is quite evident that if plaintiff, in representing to the court the amount of the outstanding debts, for the protection of which a bond should be required, did not intend to include the debts for which security had already been given, it cannot now be heard to say that such a debt, due to itself, was so included. On the other hand, if plaintiff intended that such debts, or any balances that might remain due upon them, after the exhaustion of the security, should be included within the protection of the bond, then its representation that the total amount of the debts to be so protected would not exceed $10,000 was misleading to the court, of which it was an officer, to the other creditors, and to the defendant company, which was thereby induced to become the surety on the bond. Plaintiff's present position—that the allegation (contained in the petition of December 20, 1906) to the effect that the outstanding debts, for which the bond was to be given, would not exceed $10,000 was made by Powell Bros. & Sanders Company, Limited, and not by it— is unworthy of serious consideration, for that allegation is preceded by the special and particular allegation of plaintiff and its co-receiver to the effect that they had devoted about 13 months to the administration of the affairs of Powell Bros. & Sanders Company, Limited, and "the ascertainment of its debts and liabilities and the collection of its assets" (for which services they recommended that they and their attorneys be paid $20,000), and it is followed by the allegation of all the petitioners "that, so far as concerns the unpaid debts of Powell Bros. & Sanders Company, Limited, other than the debts owned by D. G. Saunders, the creditors will be amply protected by * * * a bond in the sum of $25,000," etc., which allegation was irreconcilable, not only with the knowledge which plaintiff's previous allegation would lead one to believe that it had acquired, in the course of 13 months devoted to the effort, but with the knowledge that it actually possessed, even if we assume that

it knew of no other unpaid debts than that which it claims, in the petition herein filed, as due to itself, since the amount of that debt alone, at the time the allegation in question was made, was, as we have stated, somewhere near $40,000.

It is said that the attorney of the defendant (surety company), who appears also to have been the legal adviser of Powell Bros. & Sanders Company, Limited, and who approved the bond here sued on, aided in the preparation of the petition recommending the discharge of the receivers and the acceptance of the bond, and that the agent of the defendant, by whom the bond was signed, admitted that he had never read the petition in question, and hence was not influenced by its allegations; but there is nothing in either of those suggestions which affects the issue to be decided. One of the counsel who then represented the receivers, in testifying as to his visit to Leesville upon the occasion of the giving of the bond, says (inter alia):

"When I went up there, I had a list of the debts, as they appeared from the verified accounts from the books before us. Mr. Powell and Mr. Saunders and Mr. Monk were the people in conference with me. They had a large number of assignments of the claims against Powell Bros. & Sanders Company, Limited, * * * which they claimed they had bought up. I checked up all those assignments against their accounts, which we believed to be the accounts against Powell Bros. & Sanders Company, Limited. According to that check, the allegations of the petition of Powell Bros. & Sanders Company, Limited, against a sale, was practically correct. Mr. Monk was the attorney for Powell Bros. & Sanders Company, Limited, in this entire transaction. He and I checked over the accounts with Mr. Powell and Mr. Saunders, and after having satisfied myself, from information we had on hand, that the statement was correct, it was agreed that we file a joint petition, and I prepared a petition, with Mr. Monk, in his office. When it came to sign the petition, Mr. Monk, for some reason of his own, suggested that Mr. Powell sign it for Powell Bros. & Sanders Company, Limited. I don't remember what reason he gave, but anyhow it was done that way; but Mr. Monk was present and engaged with me in the whole investigation. He had represented Mr. Saunders and Mr. Powell in buying up these claims and getting them in shape—the assignments in shape."

In the beginning of his examination, the counsel, in answer to the question whether he remembered the petition, replied:

"Yes, I remember the entire circumstances. I prepared that petition and was present at the conference that led up to it."

It further appears, from the testimony of the witness, that Mr. Dinkins, plaintiff's president, also participated in the consultation, and was in Leesville when the petition so prepared was filed.

Mr. Monk testifies that his firm (Monk & Palmer) were, at that time, the legal advisers of Powell Bros. & Sanders Company, Limited; that a consultation, such as that described by plaintiff's counsel, took place; and he further says:

"A petition was prepared and presented to the court on the part of Powell Bros. & Sanders Company, Limited, Interstate Trust & Banking Company, and T. C. Wingate, receivers; D. G. Saunders and W. H. Powell vouching for all the allegations of the petition. My firm did not vouch for anything. We did not know, but had reason to believe, that the statements made on that occasion by Saunders and Powell, Wingate and Dinkins, who were in positions to be acquainted with the affairs of Powell Bros. & Sanders Company, Limited, were true. No inducements were held out to the receivers to join in the petition other than that a promise was made, and afterwards carried out, to pay their fees as receivers."

He was asked whether he was not more intimately acquainted with the affairs of Powell Bros. & Sanders Company, Limited, than any one save W. H. Powell and D. G. Saunders, to which he replied:

"No more than were Dinkins and Wingate, who were in charge of Powell Bros. & Sanders, Limited, as receivers."

He was asked whether the negotiations for the execution of the bond, so far as Mr. Pye, defendant's agent, was concerned, were not conducted entirely by him, and he answered, "No." Mr. Pye testified (under commission) as to the circumstances under which he signed the bond and his connection with this business, in part, as follows:

"If I remember correctly, it [the signing of the bond] was at the solicitation or request of W. H. Powell, D. G. Saunders, Lynn H. Dinkins, and possibly W. B. Spencer. No special inducement was held out, except that I was informed by one or more of the above parties that approximately 90 per cent. of the indebtedness of Powell Bros. & Sanders Company, Limited, had been satisfied and only 10 per cent. was yet to be paid, and that this would be done in a short time. * * * Don't remember ever seeing the petition and am not familiar with the allegations, and of course they had no effect on my signing the bond. * * * My impression was that the Interstate Trust & Banking Company had a claim of between $4,000 and $6,000, and my understanding was that this would be paid immediately; and, as to the claim of J. J. Hicks and T. C. Wingate, I knew nothing about that. Don't think I would have signed the bond had I known of this indebtedness. * * * No, as I remember, the first conversation I had about a bond was with Mr. Lynn H. Dinkins. Don't remember that Mr. Monk applied to me at all for this bond. If I remember correctly, Mr. Lynn H. Dinkins applied to me at my office and discussed the matter with me, with a view of getting bond issued in this case. * * * Don't now remember whether Mr. Spencer applied to me or discussed the bond question with me or not, but Mr. Dinkins did."

It will thus be seen that there is really no conflict in the testimony of the witnesses, and that the facts which are placed beyond dispute are: That the receivers and Powell Bros. & Sanders Company, Limited, furnished their respective attorneys with the information upon which the attorneys acted and upon the basis of which plaintiff's attorney prepared the petition upon which the court acted. If, at the end of 13 months' devotion to the inquiry (with the aid, as the evidence shows, of expert accountants), plaintiff did not know what the debts of Powell Bros. & Sanders Company, Limited, amounted to, it must have been grossly negligent, and, in that event, it should not have attempted to furnish information upon the subject as a basis for the action to be taken by the court and by the defendant surety company. That defendant's agent, Pye, did not obtain that information directly from the petition filed by plaintiff is wholly immaterial, since it reached him through another chan-

nel, and he acted in the belief that the only debt due to plaintiff was one of from $4,000 to $6,000, which was to be and was paid immediately.

The principle involved is the same as that upon which this court rested its decision in the case entitled Max J. Winkler Brokerage Co. v. Fidelity & Deposit Co., 119 La. 735, 44 South. 449, in which the plaintiff had obtained the renewal or continuance of a bond, with defendant as surety, to protect it against the possible dishonesty of a person who was then in its employ and whom it contemplated re-employing. The defendant, it seems, notified plaintiff that the existing bond was about to expire and requested a remittance of "continuance" premium, inclosing for signature a certificate to the effect that the employé had punctually and faithfully accounted for all money and property under his control and was not then in default, which certificate was signed by plaintiff, though, as a matter of fact, the employé had, during the year preceding, embezzled the money of plaintiff to a considerable amount. Referring to so much of the embezzlement as may have occurred prior to the "continuance" thus obtained, this court said:

"Plaintiff was bound to know that, upon the sending back of that certificate, worded precisely as it was, with the premium for one year inclosed, would depend whether the relations between the parties should terminate or not. * * * Whether that certificate be designated as a 'warranty,' or a 'representation,' it was undoubtedly a matter from which the defendant was to decide the course it was to pursue in the future. * * * If plaintiff did not know how matters stood between Oser and itself at that time, it became its duty to take steps to ascertain them. The condition of things between them had to be fixed before it could truthfully sign and send off such a certificate. It was not a question of supposition or belief to which it was asked to certify, but a matter of fact. When it certified to something that was not true, we think it destroyed the basis upon which the extension was granted."

In the instant case the plaintiff was not only bound to know, but did know, that, apart from other debts which its investiga-

tion may and should have disclosed, Powell Bros. & Sanders Company, Limited, owed it the $40,000 (about) which it is now suing for, and it must accept one or the other of the two positions; i. e., that the debt to it, regarded as being otherwise secured, was not within the contemplation of the bond, or, that, having induced the surety company to execute, the court to accept, and the other creditors to acquiesce, in the acceptance of the bond, upon the faith of its representations that the debts to be protected by it were much less in amount than they really were, it thereby, as to any debt due to itself, destroyed the basis of the obligation represented by the bond. Whatever, therefore, might be the rights of another creditor, holding a similar claim, plaintiff has no standing to recover from the surety company upon the claim here asserted by it.

[2] Counsel representing T. C. Wingate and James J. Hicks accepted service of the petition by which this proceeding was initiated but filed no intervention and, when the case was called for trial, made the statement that he had not done so because he was not then in a position to establish the claim of his clients. There appears in the transcript (offered, perhaps, in behalf of the surety company) a petition and answer, in a suit instituted by Wingate and Hicks, in the district court, and removed to the United States Circuit Court, in which the plaintiffs allege that they are the holders of certain notes, made by Powell Bros. & Sanders Company, Limited, and acquired by them whilst Wingate was receiver and Hicks was clerk of the court in which the receivership was pending, and on account of which they pray for judgment against the surety company in the sum of $19,155.16, with interest, attorneys' fees, and costs; but there was no effort made, in this proceeding, to establish the claim thus alleged, and we know of no law under which the court a qua could order the surety company to pay over to the clerk of the court $18,000, or any other sum, to be held by him, to await the pleasure or convenience of Messrs. Wingate and Hicks, the more particularly as, in the matter of Interstate Trust & Banking Co. v. United States F. & D. Co., 124 La. 648, 50 South. 613 (being a suit brought, in the parish of Orleans, by the present plaintiff against the surety company on the same note for $17,500), an exception to the jurisdiction of the Civil District Court for the parish of Orleans was sustained, and it was held that:

"There should be but one proceeding, in which all persons in interest should be made parties and their rights determined contradictorily, one with the other," etc.

[3] The claim of Brown Manufacturing Company for $77.50 is for goods sold and delivered, on open account, in 1905. It is barred by the prescription of three years.

The claims of Falls City Clothing Company for $785, with interest, and Rothschild Bros. Hat Company for $569.75, with interest, are for goods sold and delivered to the receiver, on open accounts, during 1906, and are not within the protection of the bond. Moreover, they also are prescribed.

The claim of Filer & Stowell Company for $1,146.23 is for damages alleged to have been sustained by reason of the refusal of the receivers to accept certain machinery which had been ordered by them. It is not protected by the bond.

[4, 5] Monk, Palmer & Hardin, attorneys at law, claim $2,500 for professional services, rendered during the year 1906, in finding a capitalist to advance the money required to take Powell Bros. & Sanders Company, Limited, out of the hands of the receivers. In other words, at the instance of the then stockholders, they aided in inducing D. G. Saunders to become interested in the company and to advance the money wherewith a considerable portion of the un-

secured debts were bought for his account at 33⅓ cents on the dollar. It does not appear that Powell Bros. & Sanders Company, Limited, took, or assumed to take, any corporate action in the matter, and, being in the hands of the receivers, it is perfectly clear that it had no capacity to contract the debt which interveners seek to recover.

The claim of Nathaniel E. Lee for $15,000 is for damages for personal injuries received by the claimant whilst in the employ of the two receivers. He was cited in this proceeding on August 31, 1910, to appear, within ten days, and intervene, if he so desired. On May 22, 1911, when the case was called, the defendant surety company objected to going to trial on the ground that he had not appeared, whereupon his counsel offered to file an answer, to which counsel for the surety company objected on the ground that the answer prayed for a judgment against it, though no citation had been served on it or prayed for, which objection was overruled, and judgment was thereafter rendered against said company and in favor of Lee for the amount claimed by him. It appears that Lee had been employed by the coreceivers; that he sustained the injuries complained of while so employed; and that he brought his suit for damages against his employers. While the suit was pending, the district court made its order discharging the receivers, restoring Powell Bros. & Sanders Company, Limited, to the possession of its property, accepting the bond here sued on, and concluding as follows:

"Before delivery of the possession of the property by the receivers to Powell Bros. & Sanders Company, Limited, it shall assume, in writing, all liability, if any, of the receivers to Nathaniel E. Lee, growing out of the matters alleged in the suit of Nathaniel E. Lee v. Thomas C. Wingate and Interstate Trust & Banking Co., Receivers No. —— of the docket of this court; said Powell Bros. & Sanders Company, Limited, shall make itself party defendant to said suit, in the place of the said receivers; and said suit shall proceed against it as though the receivers had not been discharged."

Thereafter Lee filed a supplemental petition, alleging what had thus taken place, and praying that Powell Bros. & Sanders Company, Limited, be made a party defendant, which was done. Something more than a year later, his suit being still pending, he filed another supplemental petition, alleging that Wingate had been reappointed receiver and praying that he be made a party defendant, as receiver under his new appointment, which was also done. There was then a trial which resulted in a verdict and judgment in favor of Lee and against the coreceivers, the company, and Wingate, receiver, in solido, for $15,000, which judgment, on appeal to this court, by the receivers, was reversed as to the appellants and otherwise affirmed. Lee v. Powell Bros. & Sanders Co., Ltd., 122 La. 639, 48 South. 134. It appears however, that Powell Bros. & Sanders Company, Limited, had not been made a party to the appeal, and the case was again brought before this court upon an appeal taken by it, and the verdict and judgment were affirmed as to it. Lee v. Powell Bros. & Sanders Co., Ltd., 126 La. 51, 52 South. 214.

Pretermitting the question of the correctness vel non of the ruling of the district court requiring the surety company to go to trial and condemning it upon a demand presented under the circumstances which have been stated, we are of opinion that the claimant has no right of recovery on the bond, for the bond was given and accepted upon the basis of allegations to the effect that it was to protect the balance of unpaid debts which had been contracted by Powell Bros. & Sanders Company, Limited, as contradistinguished from those which had been contracted by the receivers, and that such debts would not exceed $10,000, whereas Lee was then asserting an unliquidated claim against the receivers, for damages for personal injuries

sustained while in their employ, amounting on the face of his petition to $20,000. The disposition which the court made with regard to the different classes of obligations was that the bond should be accepted "as surety to guarantee the payment, by Powell Bros. & Sanders Company, Limited, of all lawful debts of said company, now unpaid (except the debts purchased by D. G. Saunders, in his individual name, or in his trade-name, of D. G. Saunders Lumber Company)"; that Powell Bros. & Sanders Company, Limited, should pay when due, the accounts payable of the receivers and should pay "within six months * * * all of the lawful debts of Powell Bros. & Sanders Company, Limited," otherwise that the court would again place the affairs of that company in the hands of receivers; that the compensation of the receivers and attorneys should be fixed at amounts aggregating $21,000; and that the receivers should forthwith pay, from funds on hand, the debts of the receivership then due (including the fees of the receivers and attorneys).

The amount claimed by Lee was not regarded either as an unpaid debt of Powell Bros. & Sanders Company, Limited, an "account payable" of the receivership, or a debt of the receivership, then due, and the special provision, and only provision, made for it was that the company should take the place of the receivers in the suit then pending for its recovery, which the company did.

The judgment appealed from condemns the surety company to pay P. L. Ferguson, $50, but he has asserted no claim against the surety company and is entitled to no judgment against it.

The claim of Maurice Rosenthal is based on a promissory note, made by Powell Bros. & Sanders Company, Limited, August 22, 1905, payable 60 days after date, with interest at 8 per cent. per annum from maturity. It is shown that he brought suit on the note in 1909, and it is conceded that the claim is within the protection of the bond.

It is therefore adjudged and decreed that the judgment appealed from be annulled and set aside, in so far as it condemns the defendant the United States Fidelity & Guaranty Company in favor of Interstate Trust & Banking Company, Brown Manufacturing Company, Falls City Clothing Company, Rothschild Bros. Hat Company, Filer & Stowell Company, Monk, Palmer & Hardin, and Nathaniel E. Lee; that the claims of said parties, against said defendant, be rejected and their suit dismissed; and that they respectively pay the costs incurred in the district court on account of said claims.

It is further decreed that said judgment be annulled and set aside in so far as it condemns said defendant in favor of Thomas C. Wingate and James J. Hicks and of P. L. Ferguson. It is further decreed that in all other respects said judgment be affirmed, and that the costs of the appeal be paid by the appellees above named, including Interstate Trust & Banking Company.

PROVOSTY, J., dissents in so far as recourse is denied to Lee upon the bond in question.